UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

***

| | |
|---|---|
| KNIGHTS OF COLUMBUS,<br><br>        Plaintiff,<br><br>vs.<br><br>THE VIRGINIA TRUST, *et al.*,<br><br>        Defendants. | 2:12-cv-00688-JCM-VCF<br><br>**ORDER AND REPORT AND RECOMMENDATION**<br><br>**(Motion to Amend Pleading to Assert Counterclaim #40 and Motion to Compel Arbitration #49)** |

       Before the court is defendants Crosby and Hill's Motion to Amend Pleading to Assert Counterclaim. (#40). Knights of Columbus (hereinafter "Knights") filed an Opposition (#48) and a Motion to Compel Arbitration (#49). Crosby and Hill filed a Reply in Support of their Motion to Amend (#66) and an Opposition to the Motion to Compel Arbitration (#67). Knights filed a Reply in Support of its Motion to Compel Arbitration (#83).

       The court held a hearing on December 4, 2012, on several motions pending before the undersigned Magistrate Judge (#40, #41, #43, #46, #49, and #56). On December 6, 2012, the court issued an order addressing motions (#41, #43, #46, and #56). This order addresses the motion to amend (#40) and motion to compel arbitration (#49).

**Relevant Background**

       Plaintiff Knights filed its complaint in interpleader on April 25, 2012, against defendants The Virginia Trust, John Doe, Trustee of The Virginia Trust, Sheree Williams, William Crosby, Melanie Crosby, and Danny Hill. (#1). Plaintiff asserted that the defendants are "claimants and/or potential beneficiaries under two separate life insurance policies issued by Knights of Columbus to Raymond

Williams," and that "[t]his interpleader action is necessary to protect Knights of Columbus from multiple liabilities for those funds." *Id.* On June 25, 2012, plaintiff Knights filed a motion to set a scheduling conference. (#15). On June 29, 2012, defendants William Crosby and Danny Hill filed stipulations for extensions of time to respond to the interpleader complaint. (#16 and #17).

On July 9, 2012, plaintiff filed a motion for entry of clerks default against defendant Melanie Crosby. (#18). The clerk entered default against defendant Melanie Crosby on July 10, 2012. (#19). On July 12, 2012, defendants William Crosby and Danny Hill filed another stipulation for extension of time to respond to the interpleader complaint. (#20). The court signed the stipulation on July 13, 2012. (#21). On July 16, 2012, the court entered an order granting the plaintiff's motion for scheduling conference (#15), and setting the conference for August 17, 2012. (#22). On August 9, 2012, defendants William Crosby and Danny Hill filed an answer to the interpleader complaint and cross-claims against Sheree Williams. (#27).

On August 17, 2012, the court held a scheduling conference pursuant to Local Rule 22-2. (#33). During the conference, the court found this action appropriate for an interpleader, and set a discovery cut-off deadline of 180 days. *Id.* On August 20, 2012, the court entered a discovery plan and scheduling order. (#30). The court also gave plaintiff "Knights one week to file a proposed report and recommendation finding that this action is appropriate for an interpleader and recommending granting its request for costs and reasonable attorneys' fees," and gave defendants one week to file any response thereto. *Id.* On August 24, 2012, plaintiff Knights filed its proposed report and recommendation regarding interpleader and request for attorneys' fees and costs. (#32). On August 27, 2012, defendant Sheree Williams filed an answer to the cross-claims against her. (#34). On August 30, 2012, defendant/cross-defendant Sheree Williams filed a limited objection (#35) to plaintiff's proposed report and recommendation (#32).

On September 4, 2012, the undersigned Magistrate Judge issued a report and recommendation (hereinafter "R&R"). (#36). After the court issued the R&R, defendants William Crosby and Danny Hill filed a late objection to the proposed report and recommendation (#32). (#37). On September 6, 2012, the Honorable James C. Mahan entered an order referring the undersigned's R&R back for reconsideration in light of the defendants' newly filed objection (#37). (#38). On September 20, 2012, defendants Crosby and Hill filed a motion to amend pleadings to assert a counter-claim. (#40).

On the same day, the undersigned issued an amended R&R, amending the recommendation to state that "[u]pon the deposit of these funds, Knights will be discharged from any and all liability as to the death benefit that is the subject matter of this interpleader and will be dismissed from this case with prejudice, *except that this discharge does not include any and all losses suffered by William Crosby and Danny Hill due to Knights' negligence, breach of contract and contractual duties, and any other applicable claims arising from Knights' conduct with regard to the polices at issue*;" and "defendants, their attorneys, agents and other persons who are in active concert or participation with them will be enjoined from commencing or prosecuting any action against Knights regarding the death benefits that are the subject matter of this interpleader action, in any federal or state court (*This injunction does not preclude commencement or prosecution of any action against Knights to recover any and all losses suffered by William Crosby and Danny Hill due to Knights' negligence, breach of contract and contractual duties, and any other applicable claims arising from Knights' conduct with regard to the polices at issue*.)" (#42)(emphasis added).

On October 9, 2012, Knights filed a motion to compel arbitration. (#49). October 16, 2012, the district judge issued an order adopting the undersign's amended R&R (#42) it its entirety. (#54). On November 13, 2012, the court issued a minute order setting a hearing for December 4, 2012, at 10:00 a.m. (#69).

. . .

**Defendants Crosby and Hill's Proposed Counterclaim**

Defendants Crosby and Hill ask this court to permit them to amend their pleading to assert a counterclaim against Knights (#40) and attached a proposed counterclaim (#40 Exhibit A) to the motion. Crosby and Hill's counterclaims arise out of the life insurance policies (hereinafter "Policies") the decedent purchased from Knights, wherein the decedent initially named them as beneficiaries. (#40 Exhibit A). Defendants allege that on July 7, 2000, the decedent submitted a Beneficiary Designation naming "The Virginia Trust Dated 9/30/99" as the beneficiary of the Policies. *Id.* After the decedent's death in October of 2011, Knights contacted Hill regarding the Virginia Trust. *Id.* The defendants assert that Knights (1) did not obtain the Virginia Trust document or the trustees name and contact information at the time the decedent submitted the Beneficiary Designation or misplaced the information, (2) has not subsequently obtained the document or the information, (3) violated its own practices and procedures by failing to obtain the trustee's name and information, and (4) has forced Crosby and Hill to hire an attorney to represent their interests in the interpleader action and to incur attorneys' fees and costs. *Id.*

Defendants assert claims of (I) negligence, (ii) breach of contract, (iii) breach of good faith and fair dealing, and (iv) breach of fiduciary duty. *Id.* Defendants' negligence claim asserts that Knights had a duty to ensure that the beneficiaries of the Policies were properly identified, that Knights breached its duty, and that defendants suffered damages in excess of $500,000 due to Knight's failure. *Id.* The breach of contract claim alleges that Crosby and Hill were third party beneficiaries of the contracts (Policies) between Knights and the decedent, and that Knights breach the contracts by "failing to pay the death benefits" to defendants. *Id.* Defendants assert in their third claim that Knights owed defendants the duty of good faith and fair dealing with respect to the Policies and breached this duty. *Id.* Defendants' fourth claim asserts that Knights had a fiduciary duty to the defendants as beneficiaries under the Policies and breached that duty by "failing to obtain the Virginia Trust document or the

identity of the trustee..." *Id.* Defendants allege in each claim that they are entitled to an award of reasonable attorneys' fees and costs because Knights forced them to hire an attorney to prosecute the interpleader action. *Id.*

### A.     Amend Pleading

Defendants assert that the court should permit them to amend their pleading to state counterclaims against Knight, as the case is very early in the proceedings, the deadline for amending pleadings has not passed, leave should be freely given when justice so requires, and no prejudice would result from the amendment. (#40). Knights argues that the motion to amend (#40) should be denied because amendment would be futile as the defendants' claims are subject to arbitration. (#48 and #49).

### B.     Compel Arbitration

Knights asserts that the court should compel the defendants' counterclaims to arbitration under the Federal Arbitration Act (hereinafter "FAA"). (#49). Knights argues that the decedent's Policies "contain a valid arbitration clause requiring the defendants, as purported beneficiaries of the [P]olicies, to submit all disputes to a binding arbitration administered by the American Arbitration Association." *Id.* Defendants argue, however, that Knights cannot have it both ways: it cannot bring an action in interpleader claiming that it does not know whether Crosby and Hill are the beneficiaries, and then move to compel arbitration on the basis that Crosby and Hill are beneficiaries under the Policies and bound by Laws of the Order of the Knights of Columbus (hereinafter "By-Laws"). (#67). Defendants assert that Knights has waived the argument that the defendants are beneficiaries by bringing the action in interpleader. *Id.*

Defendants also assert that the claims being asserted in the counterclaims involve the same factual disputes as will be argued in the interpleader, and that proceeding with discovery, motion practice, and presentation of arguments in an arbitration would be unnecessarily duplicative. *Id.* Defendants argue that Knights is "the only party clearly bound by its By-Laws" and that, "if applicable,

these By-Laws would have prohibited [Knights] from filing this court action without first mediating and then arbitrating the dispute."[1]  *Id.*

C.  **Relevant Law/Discussion**

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit."  *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006)(quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).  "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability."  *AT&T Techs.*, 475 U.S. at 650, 106 S.Ct. 1415; *see also Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir.2002) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)).

When presented with a motion to compel arbitration under the FAA, the court follows a two-step analysis: a court must determine (1) whether the parties agreed to arbitrate the dispute in question," *Webb*, 89 F.3d at 258; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); and (2) "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors*, 473 U.S. at 628, 105 S.Ct.

---

[1] Crosby and Hill argued during the hearing on the motions (#40 and #49) that *Slaughter v. Laboratory Medicine Consultants*, 2010 WL 3312610 (D. Nev. Aug. 19, 2010) support their position in opposition of arbitration.  The motion before the court in *Slaughter* was one to stay arbitration where the State Court had ordered arbitration upon Slaughter's request. *Slaughter,* 2010 WL 3312610 *2.  Laboratory Medicine Consultants filed an interpleader in State Court "seeking judicial determination of entitlement to certain funds payable to Dr. Slaughter pursuant to the 2001 Stockholder's Agreement."  *Id* at *3.  Under the Stockholder Agreement's arbitration provision, Slaughter demanded arbitration and the court ordered the same.  *Id.*  After the parties engaged in arbitration proceedings and the arbitrator held a hearing and issued an order, Slaughter sought an order from the United States District Court enjoining the scheduled arbitration.  *Id* at *3-4.  Slaughter asserted that his due process rights were being violated by the arbitrator and asked the U.S. District Court to stay the State Court ordered proceedings under 9 U.S.C. § 4.  *Id* at *5.  The court held that Slaughter was not entitled to relief from U.S. District Court as (1) he demanded arbitration from the State Court, (2) the parties had been proceeding with arbitration for three years, (3) federal district courts do not have appellate jurisdiction over a state court, and (4) Slaughter's dissatisfaction with certain rulings does not establish that his due process rights were being violated or that the arbitrator was bias.  *Id* at *6.  The court stated that Nevada law recognizes that public policy favors arbitration, and that there is no dispute that the Stockholder's Agreement called for arbitration of any disputes arising under it.  *Id* at *5.  The court denied the motion to stay arbitration.  *Id* at *6.  The court finds that this case does not support Crosby and Hill's position in opposition of Knights' motion to compel arbitration (#49).

3346. *Tittle*, 463 F.3d at 418. As neither party has argued that there are legal constraints external to the parties' agreement that foreclose the arbitration, the court need only address the first prong. *Id;* (#49 and #67).

Under the first prong, the court must determine: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id* (quoting *Webb*, 89 F.3d at 258*419 (citing *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir.1994)); see also *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir.1998). The parties do not challenge the validity of the Policies, and argue only regarding the second prong of the test. (#49 and #67). Under the second prong, this court must examine the scope of the arbitration clause and the nature of the defendants' counterclaims. *Tittle*, 463 F.3d at 419.

### 1. The Policies/Arbitration Provisions

The decedent agreed by signing the applications to both Policies that "the Charter, Constitution and Laws of the Knights of Columbus now in effect or hereafter enacted...shall be binding on me and the beneficiary." (#49 Exhibit A and B). The applications were attached to the certificate of insurance and became part of the contract of insurance. *Id*. It states in the General Provisions section of the certificates of insurance that the By-Laws are part of the insurance contract. *Id.*

Section 86 Of the By-Laws states as follows: "The purpose of this section is to prescribe the sole means to present and resolve grievances, complaints or disputes between members, certificate or policy owners or beneficiaries and the Order or its directors, officer, agents, and employees relating to the Order's financial benefit products (for instance, benefit certificates or policies, and annuities)," and that "this section applies to all past, current, and future benefit certificates or policies, members, insured, certificate or policy owners, beneficiaries and the Order," and to "all claims, actions, disputes, and grievances of any kind or nature whatsoever relating to the Order's financial benefit product." (#83-2

Exhibit B). Section 86 includes, but is not limited to, "claims based on breach of contract of benefit contract, as well as claims based on fraud, misrepresentation, violation of statute, discrimination, denial of civil rights, conspiracy, defamation, and infliction of distress against the Order or its directors, officer, agents or employees." *Id.*

### 2. Nature of Dispute

#### a. Parties to the Counterclaims

Defendants contend in their counterclaims that they are "third-party beneficiaries" of the Policies and that Knights owed a duty to them when entering into the contracts (Policies). (#40 Exhibit A). The defendants assert four counterclaims against Knights relating to the Policies. *Id.* The arbitration provision in the By-Laws specifically states that beneficiaries and the "Order" must arbitrate any dispute between them. (#83-2 Exhibit B). Defendants are claiming to be the beneficiaries of the Policies (#27 and #40 Exhibit A) and the "Order," as used in the By-Laws, refers to Knights (#83-2 Exhibit B). Disputes between the parties involved in the defendants' counterclaims (#40 Exhibit A) are within the scope of the arbitration provision. (#40 Exhibit A and #83-2 Exhibit B).

Defendants argue that if Section 86 is applicable to disputes between Knights and the defendants, Knights should have submitted the interpleader to arbitration rather than filing the complaint in interpleader in this court. (#67). This argument fails and was directly rejected in *Tittle.* The Ninth Circuit stated that "the procedural device of interpleader...allows a stakeholder effectively to avoid a dispute with the claimants while the court determines the proper allocation of the disputed fund," and that the purpose of the interpleader is to "shield a stakeholder from liability when faced with the threat of multiple inconsistent claims to a single fund." *Tittle,* 463 F.3d at 423. The court then stated that the "possibility of a hypothetical *future* dispute" does not create a present dispute that would require the interpleader action to be submitted to arbitration. *Id* at 424.

At the time Knights filed the interpleader action in this court, it was in the capacity of a stakeholder, as in *Tittle,* and Knights was "remaining neutral" and avoiding a dispute with the parties. (#1); *Tittle,* 463 F.3d at 423 (stating that the stakeholders had "effectively removed themselves from any dispute by conceding coverage up to the policy limits and remaining neutral as to the proper distribution of the funds."). The possibility of a *future* dispute with one of the parties was not enough to make the interpleader subject to arbitration. *Id* at 424. The clear language of the arbitration provision states that disputes between Knights on one side and members, certificate or policy owners or beneficiaries on the other side are subject to arbitration. (#83-2 Exhibit B). As the nature of the interpleader is that where Knights is able to remove itself from the dispute over the funds and is not a party to the dispute, the interpleader action was not subject to arbitration. *Tittle,* 463 F.3d at 423. Any argument that Knights waived its right to arbitration by initiating the interpleader action also fails, as the interpleader is not a dispute within the scope of the arbitration provision. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 838 F. Supp. 2d 967, 975-76 (C.D. Cal. 2012)(stating that any party arguing waiver of the right to arbitrate "bears a heavy burden of proof" and that the "[d]etermination of the waiver issue "must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements.").

    **b.**  **Defendants' Counterclaims**

Defendants allege claims for (1) negligence, (2) breach of contract, (3) breach of good faith and fair dealing, and (4) breach of fiduciary duty against Knights. (#40 Exhibit A). Each of these claims refer to the Policies between Knights and the decedent, Knights duties to the beneficiaries under those Policies, and the damages the beneficiaries have suffered because of those breaches. *Id.* The arbitration provision states that "all claims, actions, disputes, and grievances of any kind or nature whatsoever relating to the Order's financial benefit products (for instance, benefit certificates or policies, and annuities)" are subject to arbitration. (#83-2 Exhibit B).

An arbitration provision containing the term "relating to" has been interpreted by the Ninth Circuit as "broad and far reaching." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)(stating that "[t]he parties' arbitration clause is broad and far reaching: "Any dispute, controversy or claim arising out of or *relating to* the validity, construction, enforceability or performance of this Agreement shall be settled by binding Alternate Dispute Resolution ('ADR')...")(emphasis added). Under this "broad and far reaching" interpretation, the court finds that defendants' counterclaims for (1) negligence, (2) breach of contract, (3) breach of good faith and fair dealing, and (4) breach of fiduciary duty against Knights (#40 Exhibit A) are disputes that "relate to" the Policies. *Id.*

### 3. Conclusion

After analyzing the scope of the arbitration provision and the nature of the defendants' counterclaims, the court finds that "the dispute in question falls within the scope of that arbitration agreement," and is therefore subject to arbitration. *Tittle*, 463 F.3d at 418. There is merit, however, to defendants Crosby and Hill's argument that much of the discovery and the factual issues in the interpleader action would overlap and be duplicative of the discovery necessary in the arbitration of defendants' counterclaims. (#67). The court finds that it is in the interest of all parties involved for the court to (1) permit defendants to amend their pleading to assert their counterclaims, (2) compel arbitration of the counterclaims, (3) stay the arbitration, and (4) proceed with the interpleader action. *See* Federal Rule of Civil Procedure 15(a)(2)(stating that "[t]he court should freely give leave when justice so requires."); *Tittle*, 463 F.3d at 418. The parties, including Knights if it chooses, will conduct discovery in this interpleader action, and Knights must be served with copies of all discovery.

Accordingly, and for good cause shown,

IT IS HEREBY ORDERED that defendants Crosby and Hills' Motion to Amend Pleading to Assert Counterclaim (#40) is GRANTED.  Crosby and Hill's counterclaims are STAYED until further order of the court.

IT IS FURTHER ORDERED that the parties must proceed with discovery in this interpleader action as discussed above.

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that Knights of Columbus' Motion to Compel Arbitration (#49) be GRANTED and that Arbitration be STAYED until further order of the court.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 10th day of December, 2012.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE