UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KNIGHTS OF COLUMBUS,

    Plaintiff(s),

v.

THE VIRGINIA TRUST, et al.,

    Defendant(s).

2:12-CV-688 JCM (VCF)

**ORDER**

Presently before the court is defendant/cross-defendant Sheree Williams' ("Williams") motion for summary judgment (doc. # 125). Defendants/cross-claimants William Crosby and Danny Hill ("cross-claimants") filed an opposition to Williams' motion (doc. # 136) and Williams replied (doc. # 138). Also before the court is cross-claimants' motion for summary judgment (doc. # 126). Williams filed an opposition to cross-claimants' motion (doc. # 135) and cross-claimants replied (doc. # 139).

**I.    Background**

    a. The Life Insurance Policies

This case centers upon a dispute over two life insurance policies that were purchased by Raymond Williams ("decedent") from Knights of Columbus ("Knights"). Each of these policies provided a death benefit of $250,000 and was active at the time of decedent's death on October 1, 2011.

On September 2, 1999 and October 22, 1999, decedent purchased the life insurance policies, and initially named cross-claimants as well as Melanie Crosby as the beneficiaries of both policies, but noted on the policy documents that he would "be changing beneficiary to a trust as soon as

**James C. Mahan**
**U.S. District Judge**

1  completed" and that "[t]hese three beneficiaries will also be named in the trust." (Doc. # 126-1 p. 2).

On or about July 7, 2000, decedent filled out and executed two change-of-beneficiary forms, which named "The Virginia Trust Dated 9/30/99" as the beneficiary of all death benefits. These forms specifically stated, "Any previous beneficiary designation and any optional mode of settlement elected with respect to death proceeds payable under the above referenced certificate are hereby revoked." (Doc. # 135-2 pp. 18, 39). Decedent left the "contingent beneficiary" portion of the forms blank.

On October 12, 2001, decedent married defendant/cross-defendant Sheree Williams ("Williams"). The two remained married until decedent's death in 2011.

Since decedent's death, no party has been able to locate the written instrument of "The Virginia Trust" that was referred to in decedent's change-of-beneficiary forms. There is no account of the intended contents of this trust other than the single vague statement that appeared in the original life insurance policy documents. No party has even been able to testify that "The Virginia Trust" was ever even created.

On May 3, 2013, the Eighth Judicial District Court for the State of Nevada heard a petition by cross-claimants to determine the existence of "The Virginia Trust." The court concluded that cross-claimants failed to present enough evidence to prove the existence of the trust, and declined to exercise jurisdiction over it.

Knights' bylaws contain a provision that states, "Where, upon the death of the insured, it appears that the certificate holder has failed to make any designation, or that all of the named beneficiaries are dead, or if the designation shall fail for illegality or otherwise, then the death benefit shall be paid in the order of precedence as herein set forth: First: The insured's spouse . . . ." (Doc. 135-9 p. 3).[1]

In the instant motions, Williams and cross-claimants each argue that they are entitled to the

---

[1] The court has already found that the terms of Knights' bylaws are incorporated into the life insurance policies and were binding upon decedent. (Doc. # 95 p. 7:14-16).

James C. Mahan
U.S. District Judge

- 2 -

benefits under the terms of the life insurance policies.

b. Conduct of Parties

Additionally, cross-claimants allege claims of conspiracy and equitable estoppel against Williams, and request that the court create a constructive trust for their benefit.

The cross-claimants allege that Melanie Crosby and Williams acted together in an attempt to obtain cross-claimants' share of the benefits under the policies. They allege that Melanie Crosby attempted to have cross-claimant William Crosby sign a waiver of acceptance of service form, while misrepresenting the form as a document that would allow Williams to "take care of the funeral costs." Cross-claimants allege that, in addition to misrepresenting the nature of the form, Melanie Crosby had also partially filled out the document with a false address for cross-claimant Crosby.

The cross-claimants also allege that Williams contacted cross-claimant Danny Hill and told him that "an insurance company would be calling him" and that he should say both that "he [didn't] know anything about the Virginia Trust" and that he did not know decedent's cousin, cross-claimant Crosby. They also claim that Williams falsely represented to Knights that she was the only claimant to the insurance proceeds, moments after learning that "The Virginia Trust" was actually the designated beneficiary. Finally, the cross-claimants also allege that Williams accessed decedent's safe deposit box shortly after his death, and was not forthcoming about the fact that she had done so.

**II.     Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

**James C. Mahan**
**U.S. District Judge**

- 3 -

1  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue
2  of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213
3  F.3d 474, 480 (9th Cir. 2000) (citations omitted).

4  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the
5  moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential
6  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to
7  make a showing sufficient to establish an element essential to that party's case on which that party
8  will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails
9  to meet its initial burden, summary judgment must be denied and the court need not consider the
10 nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

11 If the moving party satisfies its initial burden, the burden then shifts to the opposing party
12 to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith
13 Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing
14 party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
15 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions
16 of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th
17 Cir. 1987).

18 In other words, the nonmoving party cannot avoid summary judgment by relying solely on
19 conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045
20 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the
21 pleadings and set forth specific facts by producing competent evidence that shows a genuine issue
22 for trial. *See Celotex Corp.*, 477 U.S. at 324.

23 Where a moving party's papers are insufficient to support a motion for summary judgment,
24 or reveal a genuine issue of material fact, summary judgment is inappropriate. *Martinez v. Stanford*,
25 323 F.3d 1178, 1182-83 (9th Cir. 2003).

26 . . .
27 . . .
28

**James C. Mahan**
**U.S. District Judge**

### III. Analysis

#### a. The Insurance Policies

In arguing that they are entitled to the benefits of the life insurance policies, cross-claimants cite several cases from other jurisdictions in which courts have given effect to a decedent's intent when a beneficiary designation fails or is ambiguous. *See AON Corporation v. Hohlweck*, 223 F. Supp. 2d 510 (S.D.N.Y. 2002); *Gignac* v. *Columbian Nat. Life Ins. Co.*, 32 N.W.2d 442 (Mich. 1948).

However, these precedents are inapplicable to this case. All of the cases cited by cross-claimants include substantial evidence of the decedent's intent. Here, there is almost no evidence indicating what decedent intended the terms of "The Virginia Trust" to be.

The only known statement that decedent made regarding the trust, indicating that, in 1999, decedent intended to include William Crosby, Melanie Crosby, and Danny Hill as beneficiaries, is not enough for the court to determine that decedent's intent was to name them as the *only* beneficiaries of the trust. Moreover, even if it had been decedent's intent to name these three as the only beneficiaries of the trust at that time, it is highly possible that decedent's intent might have changed during the ten years he was married to Williams. In such a case, it is unclear what share, if any, cross-claimants should be entitled to under the terms of this phantom trust.

Furthermore, the absence of any evidence of the trust is conspicuous in this matter. It is quite possible that even if decedent had originally intended to create a trust to benefit cross-claimants, that he later changed his mind, knowing that the terms of the policy would then substitute his wife as a beneficiary by default. Similarly, it is even possible that decedent created a comprehensive trust instrument in 1999, and later destroyed it in order to revoke it.[2] Given that the only evidence of decedent's intent as to the beneficiaries of this trust is a single vague statement made in 1999, the court would not be able to rule in favor of cross-claimants even if it was persuaded by the precedents they cite.

. . .

---

[2] In fact, though it is not directly applicable to this case, a strong analogy can be drawn to Nev. Rev. Stat. 136.240(5)(b), which creates a legal presumption that a last will and testament that is lost at the time of a decedent's death has been revoked.

**James C. Mahan**
**U.S. District Judge**

- 5 -

1    However, while decedent's intent as to "The Virginia Trust" could not be more opaque, the terms of the life insurance agreement could hardly be more clear. It is well established that "if an insurance contract provision is unambiguous, Nevada courts will 'interpret and enforce it according to the plain and ordinary meaning of its terms.'" *Century Sur. Co. v. Casino W., Inc.*, 677 F.3d 903, 908 (9th Cir. 2012) (citing *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011)). Knights' bylaws, which are incorporated into the insurance contract, unambiguously state, ". . . if the designation shall fail for illegality *or otherwise*, then the death benefit shall be paid in the order of precedence as herein set forth: First: The insured's spouse . . . ."

In this case, the designation of "The Virginia Trust" failed upon the state court's ruling that there was not enough evidence to determine that the trust had ever existed. As such, the terms of the insurance agreement clearly indicate that the benefits of the policies are to be given to Williams, as decedent's surviving spouse.

Therefore, the court will grant summary judgment in favor of Williams on the claims relating to the interpleaded life insurance benefits.

**b. Conspiracy Claim**

In Nevada, "an actionable civil conspiracy 'consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts.'" *Consol. Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998) (quoting *Hilton Hotels v. Butch Lewis Productions*, 862 P.2d 1207, 1210 (Nev. 1993)). Cross-claimants make allegations that Melanie Crosby attempted to obtain cross-claimant William Crosby's signature on a waiver of service form after misrepresenting the nature of the form and filling it in with the incorrect address.

Cross-claimants separately allege that Williams made affirmative misrepresentations to Knights that she was the only claimant to the insurance proceeds, that she called cross-claimant Hill and tried to persuade him to deny knowledge of the Virginia Trust and cross-claimant William Crosby, and that she failed to disclose the fact that she had accessed decedent's safety deposit box just after his death.

James C. Mahan
U.S. District Judge

- 6 -

While these allegations, if true, indicate that both Melanie Crosby and Williams made misrepresentations in order to prevent others from making a claim to the insurance proceeds, the cross-claimants present no evidence that these two acted in concert. Because there is no evidence that "a concerted action" took place, this claim fails as a matter of law.

### c. Constructive Trust

Nevada law holds that "a constructive trust will arise and affect property acquisitions under circumstances where: (1) a confidential relationship exists between the parties; (2) retention of legal title by the holder thereof against another would be inequitable; (3) the existence of such a trust is essential to the effectuation of justice." *Locken v. Locken*, 650 P.2d 803, 805 (Nev. 1982).

In this case, cross-claimants do not even allege the existence of a confidential relationship that Williams had with either of them. As such, this claim fails as a matter of law.

### d. Equitable Estoppel

The doctrine of equitable estoppel "functions to prevent the assertion of legal rights that in equity and good conscience should not be available due to a party's conduct." *Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 611 (Nev. 1992). The Supreme Court of Nevada has established a four-part test to determine whether equitable estoppel applies:

> (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped.
>
> Among other things, silence can raise an estoppel quite as effectively as can words.

*In re Harrison Living Trust*, 112 P.3d 1058, 1062 (Nev. 2005) (internal quotation marks omitted).

In their cross-claim and subsequent filings, cross-claimants present evidence from which a reasonable factfinder could conclude that Williams had knowledge of "The Virginia Trust" and took affirmative steps to conceal the truth from all other parties. The cross-claimants demonstrate that they have been forced to rely on Williams' assertion that she had no knowledge of "The Virginia

1  Trust" prior to decedent's death.

2  Furthermore, the cross-claimants clearly show that they do not know whether Williams had
3  any additional knowledge or evidence regarding "The Virginia Trust" that she has concealed. They
4  also show that, because the terms of the policies indicate that the benefits will go to Williams if no
5  information regarding "The Virginia Trust" is produced, their reliance upon Williams'
6  representations is possibly to their detriment.

7  Accordingly, the application of equitable estoppel is dependant upon genuine issues of
8  material fact which must be determined by a factfinder in this case. The court will therefore deny
9  Williams' motion for summary judgment as it relates to the equitable estoppel claim.

## IV.  Conclusion

IT IS THEREFORE ORDERED that defendant/cross-defendant Sheree Williams' motion for summary judgment (doc. # 125) is GRANTED as to all issues except equitable estoppel.

IT IS FURTHER ORDERED that the motion for summary judgment of cross-claimants William Crosby and Danny Hill (doc. # 126) is DENIED.

DATED January 23, 2014.

_____
**UNITED STATES DISTRICT JUDGE**